IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 26, 2008

Charles R. Fulbruge III
Clerk

No. 06-51650

KIRA INC

Plaintiff - Appellant

v.

ALL STAR MAINTENANCE INC; ALL STAR MANAGEMENT LLC
(NEVADA LIMITED LIABILITY COMPANY); SUNDT-ACTUS-BLAND
COMPANY

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:03-CV-950

Before REAVLEY, BENAVIDES, and ELROD,[*] Circuit Judges.

PER CURIAM:[**]

Following a jury trial, Plaintiff-Appellant Kira, Inc. filed this appeal and
argues that the district court (1) erroneously granted the defendants' Rule 50(a)
motion on its Lanham Act and unfair competition claims, (2) erroneously failed
to enter a judgment in its favor in light of the jury's answers to certain

---

[*] Judge Elrod is concurring in the judgment only.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

interrogatories, and (3) abused its discretion by failing to disqualify defense counsel. We affirm.

In 1999, Kira, Inc. and defendants All Star Maintenance, Inc. and Sundt-Actus-Bland Co. ("SAB") formed a limited liability company under Nevada law known as All Star Management, LLC. Pursuant to the LLC's operating agreement, Kira owned ten percent of the company and the defendants each owned forty-five percent. The LLC was formed to provide housing maintenance services on military bases under a government privatization initiative. After several years of effort, All Star Management obtained a subcontract in 2001 from developer Actus Lend Lease to provide services at Fort Hood. By all accounts, the Fort Hood project was a successful business venture.

A dispute between Carlos Garcia, Kira's president, and John Junge, chairman of All Star Maintenance, caused Junge to decide that he no longer wished to do business with Garcia outside of the Fort Hood project. Junge and David "Buck" Bland, president of SAB, then formed a second limited liability company under Delaware law, also called All Star Management. The Delaware company later obtained work through Actus Lend Lease. Junge and Bland also formed a Texas limited partnership, known as Killeen All Star Construction, to provide renovation services at Fort Hood. Meanwhile, All Star Maintenance, acting through Junge, entered into management services agreements with one of its affiliates, Champions of the West, and with SAB to provide general and administrative ("G & A") services on the Fort Hood project. In return for these services, the Nevada LLC paid Champions and SAB a management fee. The instant litigation concerns Kira's individual and derivative complaints that the defendants improperly used the name All Star Management when forming the Delaware company and breached the operating agreement, fiduciary duties, and the duties of good faith and fair dealing by using the name and by paying fees to their affiliates without Kira's knowledge and consent.

At the close of plaintiff's case, the district court granted in part the defendants' Rule 50(a) motion to the extent that Kira complained about the Delaware company's use of the same name. Kira argues that the district court applied an incorrect legal standard under the Lanham Act and state unfair competition law because the court found no evidence of actual confusion rather than considering whether there was a likelihood of confusion between the two companies. It argues that there was not only a likelihood of confusion but also actual confusion. We are not persuaded by Kira's arguments.

Testimony during Kira's case in chief concerning the name of the Nevada and Delaware companies was sparse, and we conclude that there was an insufficient conflict in the substantial evidence to create a jury question on the service mark claim. See Travis v. Bd. of Regents of the Univ. of Tex. Sys., 122 F.3d 259, 263 (5th Cir. 1997). The evidence showed that the operating agreement expressly permitted the three members of All Star Management Nevada to compete with each other and with the LLC, even to the exclusion of the LLC from business that the LLC was capable of performing. The operating agreement does not reserve the name to the LLC or otherwise prohibit its use. The evidence showed that John Junge had been using the name All Star in some form since 1985 and had created numerous businesses in the military services industry using that name. When the Nevada company was formed, Junge had to give his permission before the company could file its articles of organization under the name All Star Management. John Garcia, Kira's witness and the project manager at Fort Hood, testified that All Star had multiple companies, giving as examples All Star Maintenance, All Star Services, and All Star Management. Kira's counsel even referred repeatedly to the "All Star family of companies" during his examination of John Garcia. Carlos Garcia admitted in his testimony that All Star was the leading contractor in the military family housing industry and that Kira was relying on All Star to obtain service

contracts. It is clear that the name existed and was in use long before Kira's association with the Nevada company. We conclude that the district court correctly determined that Kira failed to meet its threshold burden of showing that it possessed a protectible interest in the service mark. See Elvis Presley Enters. v. Capece, 141 F.3d 188, 194 (5th Cir. 1998).

Furthermore, Kira also failed to create a jury question as to a likelihood of confusion. See Elvis Presley Enters., 141 F.3d at 193 (holding that liability for trademark infringement requires a likelihood of confusions between the marks). The evidence showed that All Star Management Nevada obtained the Fort Hood contract as a subcontractor from Actus Lend Lease. John Garcia testified that the LLC was formed to provide facility services for Actus. The second All Star Management also obtained subcontracting work with Actus as the principal contractor before later changing its name. Junge and Bland had a longstanding relationship with the people at Actus. Kira argues that the defendants wanted others to think that the second All Star Management was the same company as the entity doing business at Fort Hood. However, Carlos Garcia testified that Actus knew about the dispute between Kira and All Star Maintenance and also knew that Kira would not be doing future projects with All Star Maintenance and SAB. In light of this knowledge, there is no likelihood that Actus would be confused about the identity of the subcontractor.[1] See Westchester Media v. PRL USA Holdings, Inc., 214 F.3d 658, 663–64 (5th Cir. 2000) (holding that a

---

[1] As evidence of actual confusion, Kira points to testimony from John Garcia and Jose Ceballos, both of whom served as project manager at Fort Hood, to show that these employees purportedly did not know the identity of the company for which they were working because they were apparently unsure whether Kira was included in the second company. The testimony has more to do with uncertainty of the corporate structure of the various companies than it does confusion between two service marks. Furthermore, the testimony is a mere scintilla of evidence and insufficient to present a question for the jury. See Anthony v. Chevron USA, Inc., 284 F.3d 578, 583 (5th Cir. 2002).

likelihood of confusion requires a probability of confusion, which is more than a mere possibility).

Kira also presents several arguments that the defendants' method of competition was unfair and breached their fiduciary duties and duties of good faith. We do not find any of Kira's arguments persuasive.[2]

Kira next argues that the district court should have entered judgment in its favor in connection with the payment of management fees to Champions of the West and SAB because the jury found that All Star Maintenance breached the operating agreement by causing the fees to be paid and that All Star Maintenance and SAB breached their duty to act in good faith and to deal fairly with Kira. Kira argues that the management fee contracts were void and the district court was required to enter a judgment that effectively rescinded the contracts and disgorged the fees to the company. It contends that disgorgement is the appropriate remedy for breach of a fiduciary duty. We find Kira's arguments untenable because the jury specifically found that Kira, and by implication the company, suffered no harm. The jury also specifically found that the defendants did not breach any fiduciary duties. Under the controlling Nevada law, rescission is an equitable remedy that seeks to place the parties in the same position they occupied before entering into a contract. Bergstrom v.

---

[2] For example, Kira argues that the Delaware company obtained "contractual opportunities" discovered by the Nevada company's employees, that those employees also did work for Killeen All Star Construction, and that it had a reasonable expectation that the Nevada company would be the vehicle the parties used to obtain maintenance contracts. The only substantial evidence of employees doing work other than for the Nevada company showed that John Garcia presented bids in Hawaii and spent approximately five percent of his time overseeing the work of Killeen. There is no evidence, however, that Garcia was required to work exclusively for the Nevada company, or that he was paid by the Nevada company while doing work for someone else. Garcia testified that he kept a separate accounting of his time while working for Killeen. Moreover, to the extent Kira complains that Killeen performed work that should have gone to the LLC, Garcia testified that Actus prohibited the LLC from bidding on renovation work and wanted a local company. Junge and Bland had no obligation under the operating agreement to include Kira when forming Killeen as a Texas limited partnership.

Estate of DeVoe, 854 P.2d 860, 861 (Nev. 1993). A judgment returning the fees here would effectively disregard the jury's determination that Kira was not harmed and would serve no equitable purpose. The jury's verdict was understandable in light of evidence that Champions and SAB performed necessary G&A services at a rate that was substantially below the market rate. Champions and SAB combined to charge a fee of 6.25% of total revenue when Champions' normal rate alone was 7% to 8% and Kira's rate ranged from 6.7% to 10%. Kira's argument that it was entitled to equitable relief is without merit.

Finally, Kira argues that the district court erroneously denied its motion to disqualify defense counsel due to conflicts in representing both All Star Management, LLC and the two members accused in the derivative claims of harming the LLC's interests. Any conflicts asserted by Kira are more theoretical than real. All members of the LLC were parties to this action, and Kira was the only party who stood to benefit from a plaintiff's verdict. We cannot imagine, and the plaintiff does not identify, any remedy that could be obtained on behalf of the company that would be different from a remedy in favor of Kira, and we see no purpose that would have been served by independent counsel for the company under the facts of this case. The district court did not abuse its discretion. See FDIC v. U.S. Fire Ins. Co., 50 F.3d 1304, 1311 (5th Cir. 1995).

AFFIRMED.