**Juan Carlos AYUS, M.D.,P.A. and Juan Carlos Ayus, M.D.**

v.

**TOTAL RENAL CARE, INC.**

No. Civ.A. G–98–336.

United States District Court,
S.D. Texas,
Galveston Division.

April 26, 1999.

Ted C Litton, Royston Rayzor Vickery and Williams, Houston, TX, for Ted Litton, mediator.

Timothy A Beeton, Simpson and Beeton, Texas City, TX, J Christopher Reynolds, Gibbs & Bruns, Houston, TX, for plaintiffs.

Adam P Schiffer, Thad T Dameris, Vinson & Elkins, Houston, TX, for defendant.

### ORDER

KENT, District Judge.

Plaintiffs Juan Carlos Ayus, M.D., and Juan Carlos Ayus, M.D., P.A. (collectively "Dr. Ayus"), bring this action against Defendant Total Renal Care, Inc. ("TRC"), for breach of contract, common law fraud, and breach of fiduciary duty and partnership agreement. Now before the Court is Plaintiffs' Motion to Disqualify Counsel. For the reasons set forth below, the Motion to Disqualify is **GRANTED IN PART AND DENIED IN PART.**

### I. FACTUAL BACKGROUND

As of mid–1996, Dr. Ayus was a co-owner with Dr. Larry Slomowitz of limited partnerships that owned three kidney dialysis units. At that time, Dr. Ayus was regarded as one of the best nephrologists in the United States. He was well-known for his practice of using dialysis filters only once, whereas many large clinics owned by for-profit corporations reuse dialysis filters.

Toward the end of 1996, TRC began negotiations with Dr. Ayus to form a partnership to acquire most of the ownership of three kidney dialysis units. According to Dr. Ayus, officers of TRC expressly promised him that if they acquired control of the clinics, the clinics would remain non-reuse. The transaction ultimately negotiated between TRC and Dr. Ayus and Dr. Slomowitz provided that: (1) Dr. Ayus and Dr. Slomowitz would receive a payment of $8,000,000 in exchange for a 95% interest in the limited partnership that would own the clinics; (2) TRC would serve as the general partner; (3) Dr. Ayus and Dr. Slomowitz would be limited partners each owning a 2.5% interest; and (4) the partnership would pay Dr. Ayus a salary of more than $7,000 per month for ten years to serve as either the medical director or associate medical director of the three clinics.

Shortly after the transaction closed, the top officers of TRC allegedly asked Dr. Ayus to begin reusing dialysis filters. Dr. Ayus refused. Dr. Ayus alleges that TRC realized he "would not be malleable with respect to the issue of patient care, particularly 're-use' and the choice of filters." According to Dr. Ayus, TRC then began to assemble a team whose mission it was to document his every alleged misstep with the ultimate goal of firing him. This effort included the preparation of several letters by Vinson & Elkins (VE) attorney Adam Schiffer. The letters allegedly contained "outrageous and false accusations" against Dr. Ayus and were part of a campaign to create a pretext for firing him and avoiding TRC's contractual obligation. The key allegations in the letters were that Dr. Ayus was wrong to ask questions of another physician's patient and that he overrode an order of another physician.

### II. ANALYSIS

At a Scheduling Conference held on February 3, 1999, the Court ordered Dr. Ayus to move to disqualify TRC's Counsel if he intended to enter in evidence the letters prepared by Schiffer. In accordance with the Court's order, Dr. Ayus has moved to disqualify Schiffer and VE. He argues that under Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct, the "Lawyer as Witness" Rule, VE must be disqualified from representing TRC. Texas Rule 3.08 provides:

a. A lawyer shall not ... continue employment ... if the lawyer knows or believes that [he] is or may be a witness necessary to establish an essen-

tial fact on behalf of ... the client,....

Dr. Ayus argues that the letters authored by Schiffer are important evidence and, as a result, Schiffer is or may be a witness in the case, necessitating his and VE's disqualification.

TRC and VE argue that because Schiffer has no personal knowledge of the facts in this case, the attorney-witness rule is not implicated. They claim that the VE letters were based exclusively on facts communicated to Schiffer by TRC. All of the information contained in the letters can be obtained by direct testimony from TRC representatives with personal knowledge of the facts, thereby eliminating any need for reference to the letters. In addition, TRC argues that the letters are inadmissible hearsay to the extent that TRC representatives testify consistently with the facts set out in the letters. TRC, alleging that it hired VE in anticipation of litigation, also complains that disqualification under these circumstances would have the improper and unfair result of requiring "a client ... to retain two lawyers when anticipating litigation—one to communicate its position before litigation, and separate counsel to represent the same position in a lawsuit."

■ Before deciding the issue of disqualification under the applicable attorney-witness rules, the Court must determine whether the VE letters are indeed necessary evidence. Dr. Ayus argues that in order for TRC to defend against a claim of breach of contract, TRC must prove that the allegations contained in the letters were accurate, or at least made in good faith. Dr. Ayus intends to use the letters to show that he received notice of TRC's claims, attempted to investigate the basis for the claims, responded to the claims in a better than satisfactory fashion, but was nevertheless fired. He will rely upon the letters to demonstrate that TRC attempted to harass and intimidate him, and to create a pretext for his termination. To these various ends, deponents already have been and will continue to be questioned about the content of the letters.

■ Based upon the facts and allegations before the Court at this juncture, the Court concludes that the truth or falsity of TRC's allegations, as stated in the letters, is squarely in issue. Requiring both parties to make their case without those letters, or without reference to the letters in front of the jury, would unduly restrict the ability of both parties to effectively advocate their side merely to allow TRC to retain its choice of counsel. This cannot be the right result, and the Court will not, on the facts before it, restrict the parties in their use of the VE letters. Furthermore, TRC's argument that the letters are inadmissible hearsay is without merit, as the letters clearly fall within Fed.R.Evid. 801(d)(2)—admission by party-opponent. Having decided not to restrict use of the VE letters, the Court now turns to the question of the appropriateness of disqualifying Schiffer and/or VE.

■ Motions to disqualify attorneys are substantive motions determined by standards developed under federal law. *See In re Dresser Indus., Inc.,* 972 F.2d 540, 543 (5th Cir.1992). Such motions are governed by the ethical rules announced by the state and national professions in light of the public interest and rights of the litigants. *See id.; In re American Airlines, Inc.,* 972 F.2d 605, 610 (5th Cir. 1992). Accordingly, the ABA Model Rules of Professional Conduct ("Model Rules"), the ABA Model Code of Professional Conduct ("Model Code"), and the Texas Rules of Professional Conduct ("Texas Rules") are all relevant to the Court's resolution of the Motion to Disqualify. *See American Airlines,* 972 F.2d at 610. The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted. *See Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 646 F.2d 1020, 1028 (5th Cir.1981).

The seminal case addressing the issue of attorney disqualification under the attor-

ney-witness rules is *Federal Deposit Ins. Corp. v. United States Fire Ins. Co.*, 50 F.3d 1304 (5th Cir.1995). That case involved an interlocutory appeal of an attorney disqualification order. In the underlying litigation, plaintiff-appellant, the FDIC, sought to recover on an insurance policy issued by defendant-appellee, U.S. Fire. To establish certain of its affirmative defenses, U.S. Fire planned to call as witnesses two of the attorneys representing the FDIC. U.S. Fire moved the district court to disqualify the two attorneys and their law firm, asserting that the FDIC would be prejudiced if its attorneys served as both advocates and witnesses at trial. The district court granted U.S. Fire's motion to disqualify, despite the FDIC's informed consent to the representation. U.S. Fire appealed the disqualification of one of the attorneys and the law firm. The United States Court of Appeals for the Fifth Circuit affirmed the district court's order as to the disqualification of the attorney, but it vacated the order to the extent that it disqualified the law firm and remanded the matter with instructions to deny the motion as to the firm. *See FDIC*, 50 F.3d at 1318.

In *FDIC*, the Fifth Circuit determined the relevant state and national ethical standards to be: 1) the Local Rules, 2) the Model Rules, 3) the Model Code, and 4) the Texas Rules. *See id.* at 1311–12. In this District, the Texas Rules provide the standard of conduct for attorneys, thereby eliminating the need to refer to a distinct set of local rules. *See* S.D. OF TEX.LOCAL RULE 1. Furthermore, as the ABA adopted the Model Rules in 1983 as a replacement for the Model Code, the Model Code arguably no longer represents the ethical rules of the national profession. *See FDIC*, 50 F.3d at 1309, n. 4. Accordingly, this Court will look to the Model Rules and the Texas Rules in addressing the question of disqualification.

■ Model Rule 3.7, titled "Lawyer as Witness," provides in relevant part that "a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness[.]" This standard is substantially identical to that of Texas Rule 3.08 which provides: "[a] lawyer shall not ... continue employment ... if the lawyer knows or believes that [he] is or may be a witness necessary to establish an essential fact on behalf of ... the client." Although the lawyers for Plaintiffs state that they do not intend to call Schiffer or any other VE lawyers as witnesses in this case, the Court believes that Schiffer has "involved himself in the facts of this case" such that he may ultimately become a necessary witness which would place him in the awkward position of acting as both an advocate and witness before the jury. In fact, Plaintiffs' lawyers, through discovery conducted to date, have already encountered discrepancies and knowledge gaps between the deposition testimony of TRC representatives and the content of the letters. The preventive measure of disqualifying Schiffer is therefore in order, to avoid the attorney-witness problem that may yet arise in this case down the road. Accordingly, Schiffer is **DISQUALIFIED** from representing TRC at trial.

The Court reaches a different conclusion with respect to disqualification of Attorney Schiffer's entire firm. Model Rule 3.7(b) provides that "[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or 1.9." Rules 1.7 and 1.9 determine whether the combination of roles—advocate and witness—involves an improper conflict of interest with respect to the client. *See* Model Rule 3.7, cmt. 5. Such a conflict might exist "if there is likely to be a substantial conflict between the testimony of the client and that of the lawyer or a member of the lawyer's firm." *See id.* Here it is in the interest of all relevant parties—TRC, Schiffer, and VE—to disprove Dr. Ayus's allegations of bad faith, thus no improper conflict meriting law firm disqualification is readily apparent. *See FDIC*, 50 F.3d at 1314 (reaching the

same conclusion on facts involving a bad faith defense). More importantly, determining whether such a conflict exists is primarily the responsibility of the lawyer involved. *See id.* at 1314–15; Model Rule 1.7, cmt. 15. Otherwise the tactic of attempting to disqualify opposing counsel on the grounds of conflict of interest can be misused as a technique for delay and harassment. *See id.* In the instant case, Schiffer and VE contend that no improper conflict exists, so for the time being the Court will accept their assessment. Under Model Rule 3.7, then, the Court need not disqualify VE.

Texas Rule 3.08, also titled "Lawyer as Witness," similarly does not require disqualification of VE. Rule 3.08(c) states, in part, that "[w]ithout the client's informed consent, a lawyer may not act as advocate in an adjudicatory proceeding in which another lawyer in the lawyer's firm is prohibited by paragraphs (a) and (b) from serving as advocate." Assuming that VE obtains TRC's informed consent to continued representation, the Court need not disqualify VE under Texas Rule 3.08. Furthermore, in accordance with ABA Informal Opinion 89–1529 (1989), Schiffer is not prohibited from representing TRC in pre-trial proceedings; he is merely prohibited from representing TRC at trial. The ABA advises that the potential attorney-witness may serve as an advocate in taking depositions, engaging in other pre-trial discovery, and arguing pre-trial motions. However, a lawyer should not represent the client at his own pre-trial deposition, nor should he argue pre-trial motions involving his pre-trial testimony as to a contested matter unless the client consents after consultation.

One of Dr. Ayus's lawyers allegedly told Schiffer that he intended to use the VE letters to prejudice VE before the jury, presumably by attempting to demonstrate conspiratorial behavior on the part of Schiffer and VE that would diminish VE's credibility and place VE in a negative light. While it is true that disqualifying

Schiffer and VE altogether would completely avoid the issue of an appearance of impropriety on the part of TRC's litigation counsel, this reason for disqualifying a law firm failed to persuade the United States Court of Appeals for the Fifth Circuit on the facts of *FDIC.* U.S. Fire, Defendant-appellee, argued that despite the client's consent to continued representation, an attorney-witness's law firm should be disqualified because of the potential for harm to the integrity of the bar and the court, and to public perception of the judicial system, resulting from an appearance of impropriety. The Circuit was not convinced that the potential for harm was great enough to warrant the sanction of firm disqualification. *See FDIC,* 50 F.3d at 1316. Additionally, the Circuit observed that:

> [B]oth courts and commentators generally have rejected the mere appearance of impropriety as a rationale for the lawyer-witness rule on the grounds that an advocate testifying as a witness would be no more readily impeachable for bias than a former advocate. *See* GEOFFREY C. HAZARD & WILLIAM HODES, 1 THE LAW OF LAWYERING; A HANDBOOK ON THE MODEL RULES OF PROFESSIONAL CONDUCT, § 3:7:102, at 679 (1994).... Either way, due to the possibility of continuing loyalty to the client or the lawyer's expectation of future representation, the former counsel's testimony would be equally suspect. "The fact is that witnesses who at one time represented a litigant are likely to be impeachable for interest for any number of reasons, and forcing their firm to resign from the particular case is not likely to resurrect their credibility." Brown & Brown, 57 N.C.L.REV. at 611.

*Id.* at 1315. Consonant with this observation, the Circuit noted that neither the ABA nor the drafters of the Texas ethics rules relied on the appearance of impropriety as a justification for the lawyer-witness rule. *Id.* at 1316. The Court went on to state that the attorney-witness

disqualification rule does "require a balancing of the likelihood of public suspicion against a party's right to counsel of choice," but that the sanction of disqualification "must not be imposed cavalierly." *FDIC*, 50 F.3d at 1316. Taking the words of the Fifth Circuit to heart, and recognizing the severity of a sanction which deprives a party of the counsel of its choice, the Court believes the better course on these facts to be to allow VE to continue to represent TRC in this case.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Disqualify Counsel is hereby **GRANTED** with respect to attorney Adam Schiffer. However, Schiffer may continue to represent TRC in pre-trial proceedings. The Motion to Disqualify is **DENIED** with respect to Vinson & Elkins. **IT IS SO ORDERED.**