In re: George E. GUIDRY, Dwight W. Andrus, III and Dwight W. Andrus Insurance, Inc., Relators.

No. 14–10–00464–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 1, 2010.

Debora Beck Alsup, Austin, Rick Lee Oldenettel, Houston, John E. McElligott, Lafayette, for relators.

Werner Powers, Dallas, Lamont A. Jefferson, San Antonio, Alene R. Levy, Houston, for real party in interest.

Panel consists of Justices ANDERSON, FROST, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this mandamus proceeding we must determine whether the trial court abused its discretion by refusing to disqualify one of several lawyers representing the plaintiffs on grounds that the lawyer's participation in the trial would violate the lawyer-witness rule. On May 21, 2010, relators George E. Guidry, Dwight W. Andrus, III and Dwight W. Andrus Insurance, Inc. filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (Vernon 2004); *see also* Tex.R.App. P. 52. In the petition, relators, who are the defendants in the trial court, ask this court to compel the Honorable Alexandra Smoots–Hogan, presiding judge of the 164th District Court of Harris County to grant their motion to disqualify Lamont Jefferson as one of the trial lawyers for the real parties in interest, who are the plaintiffs in the trial court. Concluding that the respondent clearly abused her discretion in denying relators' motion to disqualify, we conditionally grant the writ of mandamus.

### I. BACKGROUND

Relators are insurance brokers who obtained insurance on behalf of the real parties in interest, Environmental Procedures, Inc. d/b/a Sweco Oilfield Services and Advanced Wirecloth, Inc. (collectively, "Insureds"). In 1991, relator Guidry obtained insurance, effective October 1, 1991 through September 30, 1992, for the Insureds through British–American Insurance Group Ltd. ("British American"). The coverage consisted of a commercial general liability ("CGL") policy with a limit of $1 million for any one accident or occurrence and an umbrella policy with a $3.5 million limit for any one accident or occurrence. Coverage under the 1991 British American CGL policy was apportioned among seven insurers, and the responsibility for the coverage limits under the umbrella policy was shared among twenty-eight insurers. Guidry provided the Insureds with cover notes reflecting this coverage. In 1993 and 1994, Guidry obtained the Insureds' CGL and umbrella insurance from Lexington Insurance Company. Under the terms of the Lexington policies, the limits of coverage were reduced by the costs of defense.

## The Derrick Litigation

In the summer of 1994, Advanced Wirecloth, Inc. notified Guidry that it had been sued by a competitor, Derrick Manufacturing Corporation, who alleged various patent and trademark violations, as well as other violations of Texas common law and the Texas Business and Commerce Code. Guidry forwarded the information to British American. In the summer of 1995, Derrick sued the Insureds and others alleging similar claims regarding the violation of a second patent. These lawsuits ("the Derrick Litigation") were subsequently consolidated. The Insureds notified Guidry of the second suit, which information Guidry forwarded to Lexington. After initially denying coverage, in April 1996, Lexington offered to provide defense counsel for the Insureds under a complete reservation of rights. The Insureds did not accept the services of the counsel that Lexington offered to provide at Lexington's expense, and continued to pay their retained defense counsel. In September 2001, a successor in interest to the Insureds paid approximately $15 million to settle the Derrick Litigation. By this time, the Insureds had incurred approximately $17 million in attorneys' fees in the Derrick Litigation. Despite various requests by the Insureds to their insurers for reimbursement of their defense costs, the Insureds had been reimbursed for less than $695,000 in defense costs when they settled the Derrick Litigation. The insurers did not contribute funds to settle the Derrick Litigation.

## Coverage Counsel for the Insureds During the Derrick Litigation

Lawyers at the law firm of Haynes and Boone, LLP served as coverage counsel for the Insureds during the Derrick Litigation. Haynes & Boone partner Lamont Jefferson served as primary coverage counsel for the Insureds from July 1999 through the settlement of the Derrick Litigation. Jefferson advised the Insureds regarding coverage issues. On the Insureds' behalf, Jefferson also sought reimbursement for the costs of the Derrick Litigation from the insurers. To this end, Jefferson sent at least a dozen letters to counsel for the insurers. On the Insureds' behalf, Jefferson also entered into an agreement, effective February 18, 2000, with various insurers tolling the statute of limitations for any claims that the Insureds might have against the insurers. As the settlement agreement for the Derrick Litigation was being drafted, Jefferson provided advice to the Insureds as to revisions to the language of the agreement that would help the Insureds pursue claims against the insurers after settlement of the Derrick Litigation.

## The Coverage Suit

Shortly after the settlement of the Derrick Litigation, Lexington filed a declaratory judgment action against the Insureds seeking a coverage determination (the "Coverage Suit"). The Insureds counterclaimed alleging coverage and asserting various claims. Other insurers were later added to the Coverage Suit. Jefferson was attorney in charge for the Insureds in the Coverage Suit. The Insureds eventually settled the Coverage Suit. In total, the Insureds received approximately $17 million from various insurers. The Insureds paid Haynes & Boone approximately $8 million in attorney's fees in the Coverage Suit, and the Insureds paid approximately $1.5 million in expenses.

## The Broker Suit

The Insureds filed suit in the trial court below against relators George E. Guidry, Dwight W. Andrus, III and Dwight W. Andrus Insurance, Inc. (collectively the

"Brokers") on August 29, 2003 (the "Broker Suit"). The Insureds asserted claims against the Brokers for negligence, gross negligence, negligent misrepresentation, fraud, breach of fiduciary duty, and violations of article 21.21 of the Texas Insurance Code. The Insureds also asserted claims under section 101.201 of the Texas Insurance Code ("Unauthorized Insurance Claims"). The Insureds invoked the discovery rule and the doctrine of estoppel. In the Broker Suit, the Insureds alleged that the Brokers obtained substandard insurance for the Insureds from 1991 through 1994.

## The Trial Court's Partial Summary Judgment

Based on their affirmative defense of limitations, the Brokers moved for summary judgment on the claims governed by the two-year statute of limitations, and the Insureds filed a response in opposition. The Insureds have alleged three possible dates on which the statute of limitations began to run on their claims: (1) the date on which they settled the Derrick Litigation, (2) the date on which Lexington sued them for a declaratory judgment regarding coverage, or (3) the date on which Guidry's deposition was taken in the Coverage Suit. All of these dates fall less than two years before the Insureds sued the Brokers.

The trial court granted a partial summary judgment dismissing the Insureds' claims for negligence, negligent supervision, negligent misrepresentation, and violations of article 21.21 of the Texas Insurance Code (collectively the "Two–Year Claims").

## The 2005 Trial

The remaining claims proceeded to trial in 2005, before the Honorable Martha Hill Jamison, then presiding judge of the trial court. Before the trial, the trial court granted the Brokers' motion for leave to designate Lamont Jefferson, along with many others, as responsible third parties.[1] The Brokers also designated Jefferson as a fact witness and deposed him before trial.[2]

## Jefferson's Testimony at the 2005 Trial

During their case in chief at trial, the Insureds called Jefferson as a witness.[3] Though the Two–Year Claims were not tried in 2005, the claims that were tried involve similar legal issues regarding (1) when, through the exercise of reasonable diligence, the Insureds should have discovered the alleged actionable conduct of the Brokers, and (2) the reasonableness and necessity of the actions of the Insureds' lawyers in the Coverage Suit. The transcript of Jefferson's testimony at the 2005 trial consumes more than 200 pages,[4] al-

1. Though Jefferson was designated as a responsible third party, the trial court did not ask the jury to determine the percentage of responsibility of Jefferson or any of the others designated as responsible third parties.

2. The transcript of Jefferson's deposition testimony is 159 pages long.

3. Though the Insureds had designated Jefferson as an expert witness regarding the reasonableness and necessity of their attorney's fees and costs in the Coverage Suit and the Derrick Litigation, the Insureds had not designated Jefferson as a fact witness. Nevertheless, early in his trial testimony Jefferson be-

gan testifying as a fact witness. The Brokers objected that Jefferson had not been designated as a fact witness. The Insureds responded that the Brokers had designated Jefferson as a fact witness and had deposed Jefferson "for ten hours." The trial court overruled the Brokers' objection and gave them a running objection to the Insureds' failure to designate Jefferson as a fact witness.

4. In this testimony, Jefferson never opined as to the reasonableness and necessity of the attorney's fees and costs incurred by the Insureds in the Coverage Suit or in the Derrick Litigation.

most all of which is fact-witness testimony about what happened in the Coverage Suit and the Derrick Litigation. Jefferson gave specific and significant testimony regarding (1) the Insureds' claimed damages in the Broker Suit and (2) when the Insureds discovered or should have discovered their claims against the Brokers.

## The Results of the 2005 Trial and the Appeal to this Court

During trial on the remaining claims, the trial court granted a directed verdict as to the Insureds' claims for breach of fiduciary duty. The jury found that the Brokers did not commit fraud and that certain insurance policies were independently procured, which was a defense to the Unauthorized Insurance Claims. The trial court rendered a take-nothing judgment against the Insureds, who appealed to this court.

On appeal, this court reversed the trial court's partial summary judgment based on a conclusion that most of the summary-judgment evidence submitted by the Brokers was untimely. *See Environmental Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 619–21 (Tex.App.-Houston [14th Dist.] 2009, pet. denied). This court remanded the Insureds' Two–Year Claims to the trial court. *See id.* at 637. We affirmed the remainder of the judgment. *See id.* This court's mandate issued on December 18, 2009.

## The Insureds' Lawyers

Throughout the Broker Suit, which is now in its seventh year, Werner Powers of the Haynes & Boone firm has been the attorney in charge for the Insureds. *See* TEX.R.APP. P. 8. In addition to Powers,

several other lawyers at Haynes & Boone have represented the Insureds: Alene Levy (appellate counsel), Christina Crozier, David Ylitalo, Erika Blomquist, and Stett Jacoby. Jefferson did not appear as a trial lawyer for the Insureds in the Broker Suit until March 19, 2010.

## The Insureds' Amended Petition

On remand in the trial court, Werner Powers signed an amended petition for the Insureds that was filed on January 29, 2010. In this petition, the Insureds allege that the Brokers' negligence was the proximate cause of approximately $90 million in actual damages to the Insureds.[5] The Insureds seek not more than $47 million in actual damages as to their negligent-misrepresentation claim. The Insureds also seek punitive damages, attorney's fees, prejudgment interest, and postjudgment interest.

## Status Conference on Remand

After remand, the trial court set a status conference for February 19, 2010. Powers appeared at this conference on behalf of the Insureds. At the hearing, the trial court announced its desire to try the remanded claims (the Two–Year Claims) quickly, at a trial setting in the summer of 2010 that could not be changed. To accommodate the trial court's goal, the parties agreed to a July 12, 2010 trial setting, and the parties agreed that they did not need further discovery, except relating to the Insureds' potential designation of an additional expert witness.

## The Brokers' Motion for Summary Judgment on Remand

A few weeks later, on March 4, 2010, the Brokers filed a motion for summary judg-

---

**5.** The Insureds allege the following actual damages: (1) "unpaid claims of approximately $35,000,000," (2) more than $17 million in attorney's fees from the Derrick Litigation, (3) more than $8 million in attorney's fees and costs from the Coverage Suit, and (4) lost profits of no more than $30 million.

ment based primarily on the two-year statute of limitations, which they claim bars any recovery by the Insureds on the Two–Year Claims. As part of their summary-judgment evidence, the Brokers relied upon Jefferson's February 11, 2000 letter (the "Jefferson Letter") to the Insureds in which he advises them that British American was responsible to pay "*all* costs of defense, without regard to policy limits, until the policy limits have been exhausted by either judgment or settlement." (emphasis in original). The Brokers also relied upon Jefferson's statement in this letter that Lexington and British American's position that they may pay a pro rata share of defense costs is "not supportable under either Texas or Louisiana law." The Brokers also sought summary judgment regarding a 1991–92 British American insurance policy based on Jefferson's testimony at the 2005 trial.

In their summary-judgment motion, the Brokers referred to Jefferson by name as a fact witness. The Brokers asserted that the Insureds' Two–Year Claims accrued either when the insurers issued the insurance policies, or when the Insureds began paying their own defense costs in the Derrick Litigation, or—at the latest—when they received the Jefferson Letter. Each of those occurrences took place more than two years before the Broker Suit was filed.

### Jefferson's First Appearance as a Member of the Broker Suit Trial Team

Before the Brokers filed their summary-judgment motion in reliance upon Jefferson's statements, Jefferson had not served as litigation counsel for the Insureds in the Broker Suit. Jefferson appeared as "additional counsel" on the Insureds' filings for the first time on March 19, 2010, when the Insureds filed their response in opposition to the Brokers' summary-judgment mo-

tion. Upon receiving the Insureds' summary-judgment response, counsel for the Brokers called Jefferson on the phone to inquire about Jefferson's intended role. Counsel for the Brokers also sent a letter to Jefferson, dated March 22, 2010, stating that (1) he is not clear what Jefferson's intentions are regarding his role in this case; (2) Jefferson is a material fact witness whom the Brokers intend to call at trial, if the trial court does not grant summary judgment; and (3) the Brokers think that Jefferson's status as a material fact witness precludes him from serving as a trial lawyer for the Insureds. On the same date, counsel for the Brokers sent a letter to the Insureds' attorney in charge (Powers) by facsimile, stating that (1) he understood that Jefferson intends to cover the hearing on March 26, 2010 on the parties' cross-motions for summary judgment; (2) Jefferson authored some of the key documents relied upon in the Brokers' motion for summary judgment; (3) Jefferson testified on many substantive issues at the 2005 trial; and (4) the Brokers believe it is inappropriate for Jefferson to make an appearance as counsel in the Broker Suit.

### The Brokers' Objection to Jefferson Serving on the Courtroom Team

The Brokers immediately filed a written objection to Jefferson appearing as litigation counsel for the Insureds in the Broker Suit, based primarily on the lawyer-witness rule. *See* Tex. Disciplinary R. Prof'l Conduct 3.08(a). The Brokers stated they recently learned that Jefferson planned to argue on behalf of the Insureds at the summary-judgment hearing scheduled for March 26, 2010. Pointing out that Jefferson testified extensively as a fact witness at the 2005 trial, the Brokers asserted that, because Jefferson is a key fact witness, Jefferson's appearance as an advocate for the Insureds could be perceived as

creating an appearance of impropriety and should not be allowed. The Brokers asked that the trial court limit Jefferson's role in the Broker Suit to that of a witness and not allow him to appear as a courtroom advocate in the litigation. The Brokers did not set this objection for hearing or obtain a ruling on it at that juncture.

In the meantime, the Insureds voluntarily allowed that Jefferson would not argue at the March 26, 2010, summary-judgment hearing on the parties' cross-motions for summary judgment, and Jefferson did not argue at this hearing. The trial court took the Brokers' motion and the Insureds' motion under advisement. To date, the trial court has not ruled on these pending summary-judgment motions.

### The Insureds' Motion to Strike

About a month after the summary-judgment hearing, the Insureds filed a motion to strike or overrule the Brokers' objection to Jefferson's participation as additional trial counsel in the Broker Suit. The Insureds stated that they sought to promptly resolve whether Jefferson could serve as additional trial counsel because trial was set for July 12, 2010. The Insureds argued that the Brokers' objection should be stricken for the following reasons: (1) the Insureds have confirmed that they will not call Jefferson to testify at trial; (2) Jefferson's purportedly "key" testimony does not go to "an essential fact" in the Brokers' case; (3) Jefferson's allegedly "key" evidence can be adduced through sources other than Jefferson; (4) any attempt by the Brokers to call Jefferson as a witness at trial would be a purely tactical maneuver; (5) the Brokers have not shown that allowing Jefferson to serve as additional trial counsel would violate Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct ("Rule 3.08"); and (6) even if the Brokers had shown a violation of Rule 3.08, they have not shown that they would suffer actual prejudice from Jefferson testifying as a fact witness while also serving as one of the Insureds' trial lawyers.

### The Brokers' Motion to Disqualify Counsel

One week later, the Brokers filed a motion to disqualify Jefferson from acting as trial counsel for the Insureds. In this motion, the Brokers argued that Jefferson should be disqualified for the following reasons: (1) Jefferson is an essential witness who gave lengthy deposition testimony in this case and lengthy trial testimony at the 2005 trial regarding material facts within his personal knowledge; (2) the Insureds have designated Jefferson as "additional trial counsel" in order to shield Jefferson from testifying at trial regarding coverage issues, his handling of the Coverage Suit, and statute-of-limitations issues; (3) allowing Jefferson to serve as trial counsel would violate guidelines for disqualification that are based on Rule 3.08; (4) Jefferson's trial testimony is necessary to establish essential facts; (5) allowing Jefferson to serve as both a trial lawyer and a fact witness will cause actual prejudice to the Brokers by blurring the line in the jurors' minds between Jefferson's legal arguments as counsel and his trial testimony as a fact witness, potentially inducing the jury to give undue weight to his arguments as counsel because of his extensive personal knowledge of the facts; (6) though disqualification is a severe and disfavored remedy because it can harm a party by depriving the party of its chosen counsel, the Insureds' chosen counsel has always been Powers, who remains the Insureds' attorney in charge; (7) the Insureds are seeking a tactical advantage by trying to keep Jefferson from testifying by

designating him as additional counsel;[6] and (8) the exceptions in Rule 3.08(a) do not apply, and disqualifying Jefferson will not work a substantial hardship on the Insureds.

### The Trial Court's Ruling Denying Disqualification

On May 14, 2010, the trial court held a very brief hearing on the Brokers' motion to disqualify. At the hearing, the Insureds lodged various objections against all of the evidence attached to the Brokers' motion to disqualify. The trial court sustained all of these objections. After hearing arguments of counsel, the trial court denied the Brokers' motion to disqualify.[7]

### The Mandamus Petition

On May 21, 2010, the Brokers filed their petition for writ of mandamus, contending the trial court abused its discretion by denying their motion to disqualify Jefferson. The Brokers also assert that the trial court clearly abused its discretion by sustaining the Insureds' objections to all of the attachments to their disqualification motion.

### II. Mandamus Standard on Motion to Disqualify

■■ Mandamus is appropriate to correct a trial court's abuse of discretion in denying a motion to disqualify counsel because there is no adequate remedy by appeal. *See In re EPIC Holdings, Inc.,* 985 S.W.2d 41, 52–54 (Tex.1998). In determining whether mandamus is appropriate, we focus on whether the trial court abused its discretion. *In re Meador,* 968 · S.W.2d 346, 350 (Tex.1998). In determin-

ing whether the trial court abused its discretion with respect to resolution of factual matters, we may not substitute our judgment for that of the trial court and may not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *See Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *See id.* at 840.

### III. Analysis

■ Texas Disciplinary Rule of Professional Conduct 3.08, entitled "Lawyer as Witness," provides guidance on the issue of disqualification. Rule 3.08 provides:

> (a) A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
>
> (3) the testimony relates to the nature and value of legal services rendered in the case;
>
> (4) the lawyer is a party to the action and is appearing pro se; or
>
> (5) the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and disqualification of the lawyer would work substantial hardship on the client.

**6.** In their brief in this court, the Insureds state that they "have informed opposing counsel and the trial court that Mr. Jefferson will not testify at trial as the information ad-

dressed in his testimony is available from multiple other sources."

**7.** The trial court later signed a written order to the same effect.

Tex. Disciplinary R. Prof'l Conduct 3.08(a), *reprinted in* Tex. Gov't Code, tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9). (Vernon 2005).

Rule 3.08 is grounded principally on the notion that the finder of fact may become confused when one person acts as both advocate and witness. *See Tex. Disciplinary R.* Prof'l Conduct 3.08 cmt. 4; *Anderson Producing, Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 422 (Tex.1996). "A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof." Tex. Disciplinary R. Prof'l Conduct 3.08 cmt. 4. The rule reflects the concern that an opposing party may be handicapped in challenging the credibility of a testifying lawyer. *Anderson,* 929 S.W.2d at 416. Other possible justifications for the rule include: (1) a testifying lawyer may be a less effective witness because he is more easily impeachable for interest; (2) a lawyer-witness may have to argue his own credibility; (3) while the role of a witness is to objectively relate facts, the role of an advocate is to advance his client's cause; and (4) an appearance of impropriety may be created when a lawyer testifies on behalf of his client. *See F.D.I.C. v. U.S. Fire Ins. Co.,* 50 F.3d 1304, 1311 (5th Cir.1995).

The Supreme Court of Texas has said that " '[d]isqualification is a severe remedy.' " *In re Sanders,* 153 S.W.3d 54, 57 (Tex.2004) (quoting *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990)). Disqualification is a measure that can cause immediate harm by depriving a party of its chosen counsel and disrupting court proceedings. *See id.* Thus, allegations of unethical conduct alone or evidence showing only a remote possibility of a violation of the disciplinary rules is not enough to require disqualification. *See id.* The fact that a lawyer simultaneously serves as both an advocate and a witness does not in itself compel disqualification. *See id.* Disqualification is only appropriate if the lawyer's testimony is "necessary to establish an essential fact." Tex. Disciplinary R. Prof'l Conduct 3.08(a); *see In re Sanders,* 153 S.W.3d at 57.[8] The party requesting disqualification must demonstrate that the opposing lawyer's dual roles as lawyer and witness will cause the party actual prejudice. *See id.* Even if a lawyer is disqualified based on the lawyer-witness rule, the lawyer can still represent the client in that case by performing out-of-court functions in the case, such as drafting pleadings, assisting with pretrial strategy, engaging in settlement negotiations, and assisting with trial strategy. *See Anderson Producing Inc.,* 929 S.W.2d at 422–23.

According to the Insureds, the Broker Suit "is a case brought by the [Insureds] against their insurance brokers (Defendants) for the placement of substandard insurance with financially unstable and, in some cases, insolvent insurance carriers." If the trial court does not grant summary judgment, then there may be an issue at trial as to when the Insureds first had knowledge of facts that would have caused a reasonably prudent person to have made an inquiry that would have led to the discovery of the Two–Year Claims. *See Fish v. Marsters Co.,* No. 14–06–00129–CV, 2007 WL 1438555, at \*8–9 (Tex.App.-

---

**8.** In their petition, the Brokers also argue that Jefferson should be disqualified pursuant to Texas Disciplinary Rule of Professional Conduct 3.04. At oral argument, the Brokers abandoned that contention and advised this court that they did not seek disqualification on Rule 3.04 grounds.

Houston [14th Dist.] May 17, 2007, pet. denied) (mem.op.).

From July 1999 through the filing of the Broker Suit, Jefferson served either as coverage counsel for the Insureds or as attorney in charge for the Coverage Suit against the insurers on the allegedly substandard insurance policies.[9] During the 2005 trial, Jefferson testified at length as a fact witness regarding these matters. Among other things, he testified that the first time he remembers thinking that the Insureds had a claim against the Brokers was during Guidry's deposition. However, when asked if, before the Guidry deposition, he was aware of any fact that might arouse suspicion regarding the Brokers' alleged misconduct, Jefferson testified that there may have been things that "looking back," arouse suspicion.[10] Significantly, Jefferson was the Insureds' agent and attorney, and Jefferson's testimony in this regard is material to the issue of *when* the Insureds first had knowledge of facts that would have caused a reasonably prudent person to have made an inquiry that would have led to the discovery of the Two–Year Claims.

Jefferson testified that the Insureds could have sued Lexington in 1995, 1996, 1997, 1998, 1999, or 2000, but did not do so. When asked why the Insureds did not sue the insurers sooner, Jefferson stated there were two reasons: (1) The Derrick Litigation "was a huge piece of litigation . . . and the client didn't want to open up another battlefront"; (2) "probably more importantly . . . we had two insurance companies who were giving us assurance after assurance that the money is coming."

During Jefferson's trial testimony, Powers laid a predicate for his factual inquiries to Jefferson, saying "I want to go back to some of the—some of the issues that happened in [the Coverage Suit] and who we sued and what we knew—when we knew it." Jefferson sent the Jefferson Letter to Jim Maroney, General Counsel for the Insureds' parent company, on February 11, 2000, advising that the insurance companies were taking insupportable positions on their duty to defend the Derrick Litigation.[11] In his testimony under direct examination at the 2005 trial, Jefferson addressed *"what we knew—when we knew it."* (emphasis added). This crucial knowledge and testimony goes to the heart of the Brokers' argument that Jefferson's testimony is necessary to establish essential facts relevant to the Brokers' limitations defense.

The Insureds assert that Jefferson's testimony is not necessary to establish essential facts. They allege that any evidence concerning settlement in the Coverage Suit can be presented by representatives

9. The trial court sustained objections to all of the evidence the Brokers submitted with their motion to disqualify. The Brokers assert that the trial court clearly abused its discretion when it sustained these objections. We agree, and we consider the evidence submitted by the Brokers.

10. When asked by the Insureds' counsel if until this deposition Jefferson was "aware of any fact that would even arouse suspicion as to [the Brokers'] misconduct," Jefferson testified, "I can't think of anything in particular, but in hindsight, well, there *may have been a couple of things* that might—that, in looking

back, *arouses suspicion* [sic] or falls within that category." (emphasis added). Jefferson's counsel then asked Jefferson, "But not at that time?" To which Jefferson replied, "No, sir."

11. The Insureds argue that the Jefferson Letter is not relevant to the Brokers' limitations argument because the Brokers' primary limitations argument is that limitations started to run in 1993, 1994, or 1995. However, parties are allowed to make arguments in the alternative, and the Brokers base one of their alternative limitations arguments on the Jefferson Letter.

of the Insureds with whom Jefferson communicated or other lawyers who participated in the Coverage Suit. With regard to the Jefferson Letter, the Insureds allege that the letter is the best evidence of its contents and that the recipient of the letter could testify to its contents. However, these other sources of proof would not be able to explain or testify concerning the facts that Jefferson knew that might have aroused suspicion regarding the possible existence of the Two–Year Claims.[12] In addition, because the Jefferson Letter and the evidence of what Jefferson knew and when he knew it are crucial elements of the Brokers' defense, the Brokers are entitled not only to offer the letter into evidence, but also to call the author as a witness to furnish testimony concerning the substance of the letter and his thought processes in preparing it and in filing suit on behalf of the Insureds.[13]

We conclude that, as a matter of law, Jefferson's testimony is necessary to establish an essential fact and that none of the exceptions listed in Rule 3.08(a) apply.[14] *See U.S. Fire Ins. Co.,* 50 F.3d at 1317 (holding that plaintiff's lawyer was necessary witness under lawyer-witness rule because lawyer had knowledge of facts relating to defendant's defense based on discovery of facts that would put plaintiff on notice about its loss); *Ayus v. Total Renal Care, Inc.,* 48 F.Supp.2d 714, 715–17 (S.D.Tex.1999) (disqualifying defendant's lawyer under lawyer-witness rule because lawyer had knowledge of material facts based on his authorship of several letters that were necessary evidence in the case); *Dean Park & Const. & Real Estate Invest. Corp. v. Meredith, Donnell & Abernethy,* No. 13–03–730–CV, 2005 WL 1832046, at *3 (Tex.App.-Corpus Christi Aug. 4, 2005, no pet.) (mem.op.) (holding that trial court did not err by concluding that testimony of plaintiff's lawyer was necessary to establish essential element of his client's case); *In re Bahn,* 13 S.W.3d 865, 874 (Tex.App.-Fort Worth 2000, no pet.) (holding that trial court did not err by concluding that testimony of plaintiff's lawyer was necessary to establish essential element of his client's case).

In addition, allowing Jefferson to serve as both a trial lawyer and a fact witness would cause actual prejudice to the Bro-

---

**12.** The Insureds cite *In re B.L.H. See* No. 01–06–00817–CV, 2008 WL 864072, at *3–5 (Tex. App.-Houston [1st Dist.] Mar. 27, 2008, no pet.) (mem.op.). In that case, the party moving for disqualification did not establish that the lawyer's testimony was necessary to establish an essential fact, and the motion to disqualify was filed on the night before the first day of trial. *See id.* The *B.L.H.* case is not on point.

**13.** In a post-submission letter, the Insureds filed the Brokers' latest designation of witnesses emphasizing that several witnesses were listed who could testify with regard to the accrual of their cause of action. Those witnesses, however, cannot testify regarding (1) the facts that Jefferson knew that might have aroused suspicion regarding the possible existence of the Two–Year Claims, or (2) Jefferson's understanding of the facts or knowledge of insurance law that affected Jefferson's thought process and conclusions when he advised his clients to settle the Coverage Suit and prosecute claims against the Brokers.

**14.** The Insureds argue that the exception in Rule 3.08(a)(5) applies. For that exception to apply, Jefferson must have promptly notified opposing counsel that Jefferson expects to testify at trial. *See* Tex. Disciplinary R. Prof'l Conduct 3.08(a)(5). Jefferson has not given this notification; therefore, this exception does not apply. *See In re Bahn,* 13 S.W.3d at 874. Even if this notification had been given, there is no evidence that disqualification would work a substantial hardship on the Insureds. Powers has been attorney in charge for the Insureds from August 29, 2003 to the present. Jefferson made his first appearance as counsel in the Broker Suit on March 19, 2010, and that appearance was as additional litigation counsel.

kers by blurring the line in the jurors' minds between Jefferson's legal arguments as counsel and his trial testimony as a fact witness, potentially inducing the jury to give undue weight to his arguments as counsel because of his extensive personal knowledge of the facts or because the jury could not recall whether statements he made during the trial were made from the counsel table or the witness stand. If Jefferson were permitted to serve on the Insureds' courtroom team, the Brokers would be prejudiced in their ability to obtain Jefferson's exclusion from the courtroom under the rule for exclusion of witnesses. *See Anderson Producing, Inc.,* 929 S.W.2d at 423 (finding no prejudice when party, among other things, made no effort to exclude lawyer-witness from the courtroom by placing him under the rule.). In denying the motion to disqualify, the trial court may have determined that allowing Jefferson to occupy dual roles as trial lawyer and fact witness would not cause the Brokers actual prejudice. To the extent that the trial court made this determination, we conclude that the court clearly abused its discretion.[15] *See In re Bahn,* 13 S.W.3d at 874 (concluding that lawyer's dual roles as trial lawyer and fact witness would cause actual prejudice to opposing party).

■ The Insureds further claim that the Brokers are attempting to use Rule 3.08 as a tactical tool to deprive them of their right to be represented by the lawyer of their choice.[16] See Tex. Disciplinary R. Prof'l Conduct 3.08, cmt. 10. In this case, as the Brokers point out, throughout the Broker Suit, the Insureds have chosen Powers as their attorney in charge. The Insureds have not chosen to replace Powers as attorney in charge or to designate Jefferson as attorney in charge. Rather, the Insureds seek to add Jefferson to their existing six-member litigation team. Powers is still the Insureds' attorney in charge, and disqualifying Jefferson would not deny the Insureds their choice of Powers as their attorney in charge. According to the Insureds, they asked Jefferson to serve as additional trial counsel "recognizing the pressures created by the fast-track schedule in this complex case and scheduling conflicts created by Mr. Powers' busy trial docket." Seeking to disqualify "additional counsel" would not appear to be a tactical tool to deprive the opposing party of the right to be represented by the "law-

**15.** The Insureds cite this court's opinion in *Schwartz v. Jefferson. See* 930 S.W.2d 957, 960–61 (Tex.App.-Houston [14th Dist.] 1996, orig. proceeding). The *Schwartz* court did not have the benefit of the legal standard adopted by the Supreme Court of Texas in *In re Sanders. See* 153 S.W.3d at 56–57. In addition, as noted by the Insureds, the party seeking disqualification in *Schwartz* did not show that the lawyer's testimony was necessary to establish an essential fact. *See Schwartz,* 930 S.W.2d at 960–61. If the *Schwartz* movant had shown that the lawyer's testimony was necessary for the movant to establish an essential fact, then, under *In re Sanders,* the movant would have to show actual prejudice from opposing counsel's service as both trial counsel and a necessary witness. *See In re Sanders,* 153 S.W.3d at 57. The fact that the nonmovant is not calling the lawyer to testify at trial would not be relevant to such an analysis. *See id.* The *Schwartz* case is not on point.

**16.** The Insureds also suggest that, though the Brokers only sought to disqualify Jefferson, their eventual goal is to disqualify the entire Haynes & Boone firm in the future. However, the record reflects that Haynes & Boone has obtained the clients' informed consent as to some Rule 3.08 issues, and with the Insureds' informed consent, nothing in Rule 3.08 would preclude Haynes & Boone from continuing to represent the Insureds even if Jefferson is disqualified from serving as one of their trial lawyers. *See* Tex. Disciplinary R. Prof'l Conduct 3.08(c); *Anderson Producing Inc.,* 929 S.W.2d at 424.

yer of his or her choice."[17] *See id.* The important concern for the Insureds' freedom to choose their lawyer is less pronounced when the disqualified lawyer is not the attorney in charge. While parties have freedom to choose two lawyers or, with leave of court, more than two lawyers,[18] the need to defer to a party's choice of counsel is diminished when the lawyer in question is merely "additional counsel."

Furthermore, Jefferson first appeared as additional counsel in the Broker Suit late in the litigation, and the Brokers promptly objected. In addition, before Jefferson's first appearance in March 2010, he had already testified as a fact witness, been designated as a fact witness, and had his letters and testimony cited in the Brokers' summary-judgment motion. Given these circumstances, there is little, if anything, to suggest that the Brokers are seeking to disqualify for tactical reasons.

### IV. CONCLUSION

Under the applicable standard of review, we conclude that the respondent clearly abused her discretion in denying the Brokers' motion to disqualify. We are confident that the respondent will vacate her order denying the Brokers' motion to disqualify and will issue an order disqualifying Lamont Jefferson from serving as trial counsel in the Broker Suit.[19] Only in the event the respondent fails to do so, will the writ issue.

---

**17.** At oral argument Jefferson acknowledged that he had not been designated as attorney in charge for the Insureds.

**18.** *See* Tex.R. Civ. P. 9 ("Not more than two counsel on each side shall be heard on any question or on the trial, except in important cases, and upon special leave of the court.").

**19.** A lawyer disqualified under the lawyer-witness rule is still free to represent the client in that case by performing out-of-court functions, such as drafting pleadings, assisting with pretrial strategy, engaging in settlement negotiations, and assisting with trial strategy. *See Anderson Producing Inc.*, 929 S.W.2d at 422–23.